THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON A. HOOK,                          :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :     CIVIL ACTION NO. 3:23-CV-1204
                                        :     (JUDGE MARIANI)
                                        :     (Magistrate Judge Carlson)
PIKE COUNTY, et al.,                    :
                                        :
          Defendants.                   :

## MEMORANDUM OPINION

### I. INTRODUCTION

Pending before the Court is Magistrate Judge Martin C. Carlson's Report and

Recommendation ("R&R") (Doc. 42) pertaining to Defendants' Rule 12(b)(6) Motion to

Dismiss (Doc. 31) and Plaintiff's "Motion to Appoint Guardian Ad Litem For Minor Plaintiffs"

(Doc. 41). With their Motion to Dismiss, Defendants ask the Court to dismiss Plaintiff's

Complaint in its entirety. (*See* Doc. 31 ¶ 58.) Plaintiff, on the other hand, contends that

dismissal is not warranted and that the Court should appoint a guardian ad litem for

Plaintiff's minor children. (Doc. 40.)

The Plaintiff in the Complaint is Jason A. Hook. (Doc. 1.) The Defendants are the

Pike County District Attorney's Office, the Pike County Children, Youth, Family Services

("CYS"), Sarah Wilson, Raymond Tonkin, Detective Mike Jones, Detective Christian

Robinson, Detective Molly Carson, Detective Loris McFarlane, Christine Rechner, Lindsey

Collins, Juan Alvarado, and Michelle Burrell. (*Id.*)  Plaintiff's Complaint contains numerous

counts arising out of alleged violations of his rights pursuant to the First, Fourth, and

Fourteenth Amendments secured by the U.S. Constitution. *See* 42 U.S.C. §1983. Plaintiff's

Complaint filed on July 20, 2023 contains eight counts: (1) Fourth Amendment violations –

unlawful governmental intrusion, unlawful seizure of minor children, and false arrest –

against Defendants Pike County, Tonkin, Wilson, Jones, Robinson, Carson, and McFarlane;

(2) Fourteenth Amendment Due Process violations against Pike County, Tonkin, Wilson,

Jones, Robinson, Carson, and McFarlane; (3) Fourth Amendment unlawful imprisonment

violation against Pike County, Tonkin, Wilson, Jones, Robinson, Carson, and McFarlane; (4)

Fourteenth Amendment Due Process Violation – First Amendment Freedom of Association

– against Pike County, Pike County CYS, Burrell, Alvarado, Tonkin, and Collins; (5) Fourth

Amendment false imprisonment/false arrest against Pike County, Tonkin, Wilson, Jones,

Robinson, and Carson; (6) Unlawful search and seizure of residence against Tonkin,

Wilson, Jones, Robinson, and Carson; (7) Municipal Liability – failure to train and supervise

– against Defendants Pike County, Tonkin, Wilson, Carson, Robinson, and Jones; and (8)

Fourteenth Amendment Due Process Violation against CYS, Burrell, Alvarado, Wilson, and

Rechner. (Doc. 1.)

On April 26, 2024, Magistrate Judge Carlson filed an R&R recommending that

Defendants' Motion to Dismiss be granted and that Plaintiff's Motion to Appoint Guardian Ad

Litem be denied. (Doc. 42.) On May 14, 2024, Plaintiff filed objections to Magistrate Judge

Carlson's R&R. (Doc. 44.) For the reasons explained below, the Court will overrule Plaintiff's

objections, adopt the R&R (Doc. 42) as modified, grant Defendants' Motion to Dismiss in

part (Doc. 31) as it relates to Plaintiff's claims for declaratory and injunctive relief, and deny

Plaintiff's Motion to Appoint Guardian Ad Litem (Doc. 41). The Court will dismiss Plaintiff's

claims for declaratory or injunctive relief without prejudice, and will stay its consideration of

Plaintiff's claims for monetary relief until the termination of the ongoing state court

proceedings.

## II. Background[1]

The *pro se, in forma pauperis* Complaint is brought by Plaintiff Jason Hook, an

inmate at Pike County Correctional Facility, against a number of law enforcement and

institutional defendants alleging violations of his constitutional rights following a child abuse

investigation which resulted in his arrest and on-going prosecution. The allegations in

Hook's Complaint relate to a 2021 child abuse investigation after which Hook was charged

with multiple child abuse felonies including Rape of a Child, Statutory Sexual Assault,

Involuntary Deviate Sexual Intercourse with a child, and multiple child pornography charges

---

[1] Because there is no noticeable disagreement as to the background provided in Magistrate Judge Carlson's "Factual Background and Procedural History" section of his R&R, the Court adopts and incorporates that background here. (*See* Doc. 42 at 1-3.)

for which he is currently incarcerated awaiting trial. *See Commonwealth of Pennsylvania v. Jason A. Hook*, CP-52-CR-0000435-2021.

Hook alleges that Defendants violated his constitutional rights when they came to his property on July 23, 2021, without a warrant or court order and without his consent or probable cause and took his wife and children to a Children's Advocacy Center (CAC) where they were interrogated for hours. (Doc. 1 ¶¶ 15-46.) Hook was arrested the same day following interviews with his children. He alleges his arrest was based upon false statements made by at least one of his children that were the result of improper interrogation methods, over three hours in custody, and the use of suggestive questioning techniques. (*Id.* ¶¶ 95-106.) He then alleges that that CYS Defendants Juan Alvarado, Michelle Burrell, and Lindsey Collins provided knowingly false information to obtain an Emergency Shelter Care that granted removal of Hook's children from Jason and Holly Hook, violating their liberty interest in the care, custody, and control of their children (*id.* ¶ 79), and that they provided insufficient notice of the hearing, which he received a week prior, and no legal counsel or means to participate in the hearing (*id.* ¶¶ 85-88). He also alleges that the subsequent search of his home on July 28, 2021, which was executed with a warrant, was unlawful because the warrant was overly broad, based on false statements and omissions, and related only to the child pornography charges, which apparently occurred at another residence. (*Id.* ¶¶107-121.) He further broadly claims that the

4

institutional defendants Pike County and Pike County Children, Youth, and Family Services are liable due to a failure to properly train their employees on proper forensic interviewing of alleged child abuse victims. (*Id*. ¶¶ 122-137.)

Hook's Complaint alleges violations of his First, Fourth, and Fourteenth Amendment rights relating to the investigation and arrest and parallel child custody proceedings. His Complaint also brings claims on behalf of his wife, Holly Hook, and their minor children. However, as explained below, the Court considers this Complaint filed only as to the claims asserted by Jason Hook. Hook requests compensatory and punitive damages as well as injunctive relief in the form of an order to release his children to the custody of their mother and dismiss the child dependency matters. (Doc. 1 at 19.)

On October 27, 2023, the Court deemed the Complaint filed only as to Plaintiff Jason Hook, noting that Holly Hook did not sign the Complaint and that Jason Hook, as a *pro se* plaintiff, had no right to represent other parties in federal court. (Doc. 7.) Defendants filed a Motion to Dismiss the Complaint on February 1, 2024. (Doc. 31.) On April 15, 2024, Plaintiff filed a "Motion to Appoint Guardian Ad Litem For Minor Plaintiffs." (Doc. 41.) On April 26, 2024, Magistrate Judge Carlson filed his R&R recommending that the Motion to Dismiss be granted and Motion to Appoint Guardian Ad Litem be denied. (Doc. 42.) On May 14, 2024, Hook filed his Objections to the R&R. (Doc. 44.) The two pending motions are now ripe for disposition.

5

## III. STANDARD OF REVIEW

### A. District Court Review of R&Rs

A district court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C.

§ 636(b)(1)(B). If a party timely and properly files a written objection to a magistrate judge's

report and recommendation, the district court "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection

is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3;

*Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The *de novo* standard applies only to

objections which are both timely and specific. *Goney v. Clark,* 749 F.2d 5, 6-7 (3d Cir.

1984).

### B. Motion to Dismiss

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

(2009).

6

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id*.

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting

*Iqbal,* 556 U.S. 679).

The Third Circuit Court of Appeals has identified the following three-step inquiry as

appropriate to determine the sufficiency of a complaint pursuant to *Twombly* and *Iqbal:*

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir.2011); *see also Connelly v. Steel*

*Valley Sch. Dist.,* 706 F.3d 209, 212 (3d Cir. 2013); *Santiago v. Warminster Twp.,* 629 F.3d

121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the reviewing court examines:

> the "complaint, exhibits attached to the complaint, [and] matters of public record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), we can also consider documents "that a defendant attaches as an exhibit to a motion to dismiss," *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), if they are "undisputedly authentic" and "the [plaintiff's] claims are based [on them]," *Mayer*, 605 F.3d at 230. That holding extends to settlement material because plaintiffs "need not provide admissible proof at th[e] [motion-to-dismiss] stage." *In re OSG Sec. Litig.*, 12 F. Supp.3d 619, 622 (S.D.N.Y. 2014); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp.3d 936, 961 n.5 (N.D. Cal. 2014) (same). Moreover, the Supreme Court has been clear about the scope of our review, stating we "*must* consider the complaint in its entirety, as well as other sources [we] ordinarily examine when ruling on ... motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127

S. Ct. 2499, 168 L.Ed.2d 179 (2007) (emphasis added).

*Estate of Roman v. City of Newark,* 914 F.3d 789, 796–97 (3d Cir.), *cert. denied sub*

*nom. Estate of Roman v. City of Newark, New Jerse*y, 140 S. Ct. 82, 205 L. Ed. 2d 28

(2019), and *cert. denied*, 140 S. Ct. 97, 205 L. Ed. 2d 28 (2019).

Even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit

a curative amendment unless such an amendment would be inequitable or futile." *Phillips v.*

*Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Plaintiff Jason A. Hook makes five objections to Magistrate Judge Carlson's R&R.

(*See* Doc. 44.) Plaintiff's objections to the R&R are timely. 28 U.S.C. § 636(b)(1). Although

the Court finds that some of Plaintiff's objections are general complaints that lack clarity and

specificity, and thus are not entitled to *de novo* review, out of an abundance of caution, the

Court will review each of Plaintiff's Objections in the order in which they were raised *de*

*novo*. 28 U.S.C. § 636(b)(1).

**A. Claims by Holly Hook**

Plaintiff objects to the R&R on the basis that "Holly Hook's claims for relief are valid on the face and actionable." (Doc. 44 at 5.) In essence, Plaintiff Jason Hook argues that he has had difficulty in communicating with Holly Hook and that Holly fears reprimand for contacting Plaintiff, thus warranting the survival of her claims. (*Id*.)

The Third Circuit has consistently held that:

> [a]lthough an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). This principle has been applied by the Supreme Court, this Court, and other courts in various contexts. *See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 ... does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed attorney" (footnote omitted) ); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that a non-lawyer could not litigate pro se on behalf of an ERISA plan); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing pro se, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411–12 (2d Cir. 1976) (holding that a non-attorney could not appear pro se to conduct a shareholder's derivative suit).

*Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170–71 (3d Cir. 2018);

*see also Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010).

Here, Magistrate Judge Carlson correctly explained in his R&R that "a *pro se* plaintiff may not litigate claims on behalf of other parties in federal court."[2] (Doc. 42 at 9.) Additionally, Magistrate Judge Carlson aptly noted that Holly Hook did not respond to the Court's November 24, 2023, deadline to pay the filing fee or file an appropriate action to proceed *in forma pauperis.* (*Id.*) For these reasons, the Court adopts this portion of the R&R and overrules Plaintiff's objection on this basis. The Complaint is deemed filed as to Jason Hook only.

## B. Claims of Plaintiff's Children

Hook also objects to the R&R on the basis that "[t]he claims of the minor children that are asserted in this complaint, should not be dismissed as they properly lay out grounds for relief." (Doc. 44 at 6.) While recognizing that he cannot represent his children in his *pro se* capacity, Plaintiff nonetheless contends that the Court should appoint a guardian ad litem for the children or should otherwise "list the case for 'pro bono' representation." (*Id.*) However, as Magistrate Judge Carlson explained, and as this Court discusses *infra*, "since this matter is still being litigated in State court, [...] the motion to appoint guardians ad litem [will] be denied." (Doc. 42 at 10 n.1.) The Court agrees with the R&R's conclusion that appointing a guardian ad litem for the children would be inappropriate given that the Court

---

[2] Despite his contentions to the contrary, it is of no moment that Plaintiff has had "difficulty making contact with Holly Hook." (Doc. 44 at 5-6.) Plaintiff is plainly precluded from representing his wife as a *pro se* litigant. *See Collinsgru,* 161 F.3d at 232.

will abstain under *Younger* and because Defendants are entitled to immunity and are

otherwise improper defendants. Therefore, the Court adopts this portion of the R&R,

overrules Plaintiff's objections on this basis, and will deny Plaintiff's Motion to Appoint

Guardian Ad Litem (Doc. 41) accordingly.

## C. Application of the *Younger* Abstention Doctrine

Plaintiff objects to the R&R's determination that the Court is barred from hearing

Plaintiff's claims under the *Rooker-Feldman* doctrine and that the Court should abstain

under the *Younger* abstention doctrine. (*See* Doc. 44 at 9-11; Doc. 42 at 11-15.) Although

the Court finds that *Rooker-Feldman* would be inappropriately applied to Plaintiff's claims in

this instance, the Court agrees with the R&R's determination that the *Younger* abstention

doctrine bars Plaintiff's claims insofar as they make requests for declaratory or injunctive

relief. The Court also finds that *Younger* is a proper basis to stay Plaintiff's claims for

monetary relief. The Court will therefore adopt the R&R as modified for the reasons

explained below.

> As a general rule, "a federal court's obligation to hear and decide a case" within
> its jurisdiction "is virtually unflagging," and a court has "no more right to decline
> the exercise of jurisdiction which is given, than to usurp that which is not given."
> *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S.Ct. 584, 187 L.Ed.2d
> 505 (2013) (internal quotation marks omitted). But in *Younger v. Harris*, the
> Supreme Court held that, absent extraordinary circumstances, a federal court
> cannot enjoin an ongoing state-court criminal proceeding. 401 U.S. 37, 41, 45,
> 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see also Steffel v. Thompson*, 415 U.S.
> 452, 460–61, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). That holding rested on
> principles of equity, comity, and federalism.

*Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023).

In the years following *Younger*, the Supreme Court expanded the circumstances

under which abstention may be appropriate beyond the criminal proceedings context. *See*

*Sprint*, 571 U.S. at 78; *NOPSI*, 491 U.S. at 367–68; *Juidice v. Vail*, 430 U.S. 327, 335–36

(1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975). In *Sprint*, the Supreme Court

established the circumstances under which a district court can abstain from hearing claims

brought in federal court under the doctrine set out in *Younger*. Following the Supreme

Court's *Sprint* decision, in *Malhan v. Sec'y United States Dep't of State,* 938 F.3d 453, 456

(3d Cir. 2019), the Third Circuit outlined the *Sprint* categories for determining whether

abstention under *Younger* is appropriate:

> *Younger* applies to only "three exceptional categories" of proceedings: (1)
> "ongoing state criminal prosecutions"; (2) "certain 'civil enforcement
> proceedings' "; and (3) "pending 'civil proceedings involving certain orders
> uniquely in furtherance of the state courts' ability to perform their judicial
> functions.' " *Sprint*, 571 U.S. at 78–79, 134 S.Ct. 584 (alteration omitted)
> (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*
> (*NOPSI*), 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)). Only
> after a court finds that a proceeding fits one of those descriptions should it
> consider *Middlesex*'s "*additional* factors."

*Id.* at 462.

Thus, the Third Circuit in *Malhan* clarified that district courts should first consider the

three categories outlined in *Sprint* prior to considering the "additional factors" that were

established in the Supreme Court's decision in *Middlesex County Ethics Comm. v. Garden*

*State Bar Assn.,* 457 U.S. 423, 433–434 (1982). In *Schall v. Joyce*, 885 F.2d 101, the Third

Circuit listed the additional *Middlesex* factors that should be considered after a finding that

the state case at issue fits into one of *Sprint*'s exceptional categories:

> Abstention under *Younger* is appropriate only if (1) there are ongoing state
> proceedings that are judicial in nature; (2) the state proceedings implicate
> important state interests; and (3) the state proceedings afford an adequate
> opportunity to raise federal claims.

*Schall*, 885 F.2d at 106.

Because the *Younger* analysis varies in its application to the ongoing criminal and

familial proceedings, the Court will address each of the ongoing proceedings individually.

### 1. Criminal Proceedings

The Court agrees with the R&R's conclusion that the Court should abstain from

considering Hook's claims relating to his ongoing criminal proceedings to the extent he is

requesting declaratory or injunctive relief. (Doc. 42 at 11-15.)

First, Magistrate Judge Carlson correctly determined that "it is evident that there are

on-going state criminal proceedings in this case as Hook is currently incarcerated and

awaiting trial for charges of multiple child abuse felonies including Rape of a Child, Statutory

Sexual Assault, Involuntary Deviate Sexual Intercourse with a child, and multiple child

pornography charges." (Doc. 42 at 13.) As the Court has noted, *supra*, Hook's criminal

proceedings are currently awaiting trial. *See Commonwealth of Pennsylvania v. Jason A.*

*Hook*, CP-52-CR-00000435-2021; *Commonwealth of Pennsylvania v. Jason A. Hook*, CP-

64-0000371-2021; *Commonwealth of Pennsylvania v. Jason A. Hook*, CP-52-CR-0000361.

This is precisely the type of ongoing procedural posture described in the first *Sprint* category

outlined in *Malhan,* 938 F.3d at 462 ("ongoing state criminal prosecutions"), as well as the

first *Middlesex* factor outlined in *Schall*, 885 F.2d at 106 (explaining that the first factor is

whether "there are ongoing state proceedings that are judicial in nature.").

Second, examining whether "the state proceedings implicate important state

interests," *Schall,* 885 F.2d at 106, Magistrate Judge Carlson appropriately noted that "it is

clear that the state proceedings implicate important state interests, since this matter

involves state criminal law enforcement, an issue of paramount importance to the state."

(Doc. 42 at 13.)

Finally, examining whether "the state proceedings afford an adequate opportunity to

raise federal claims," *Schall*, 885 F.2d at 106, Magistrate Judge Carlson correctly noted that

"these allegations which challenge the investigation which led to his arrest, and matters

pertaining to the subsequent search of his residence resulting in evidence to support those

state charges, fit squarely within the purview of the state court proceedings." (Doc. 42 at

11.) Indeed, Plaintiff's argument that Defendants "did not have any reasonable suspicion"

(Doc. 44 at 8) directly implicates the ongoing criminal proceedings in this case. As

Magistrate Judge Carlson noted, "in his state proceedings, Hook will have the opportunity to

challenge the Fourth Amendment evidentiary issues related to his arrest and the

constitutionality of the subsequent search of his residence." (Doc. 42 at 13.) Therefore, because both the *Sprint* and *Middlesex* factors have application here, *Younger* abstention is appropriate with respect to Plaintiff's claims for injunctive relief relating to the ongoing criminal proceedings. The Court will therefore dismiss these claims without prejudice pursuant to *Younger*.[3]

As to Hook's claims for monetary damages, the Court concludes that these claims are properly stayed. Although Hook's request for monetary relief is unavailable in the ongoing criminal proceedings and is thus not appropriate for abstention under *Younger*, the Third Circuit has repeatedly held that it is appropriate to *stay* those claims for monetary damages insofar as they implicate the ongoing proceedings. *See, e.g., Williams v. Hepting,* 844 F.2d 138, 144 (3d Cir. 1988) (affirming the district court's decision to abstain from deciding a plaintiff's "allegations that attack the validity of his state court conviction until they are presented to and disposed of by the state courts" but noting that "[w]e have required the

---

[3] *Rooker-Feldman* does not apply to ongoing criminal proceedings. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The doctrine thus occupies "narrow ground." *Id.* It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291. Because Hook's criminal proceedings are ongoing, dismissal of Hook's claims relating to the criminal proceedings would be improper since there has not yet been a "judgment." Therefore, the Court declines to adopt the R&R's conclusion that *Rooker-Feldman* would be a proper basis for dismissal of Hook's claims relating to the ongoing criminal proceedings.

district court to stay rather than dismiss claims that are under consideration in ongoing state proceedings."); *Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) ("With respect to Plaintiffs' claims for damages and attorney fees against Whittaker and Lease in their individual capacities … we have held that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings.") (internal quotations and citation omitted).

Here, Hook's claims for monetary damages stem from what he alleges were the unlawful seizure of his children and intrusion onto his property without probable cause. Therefore, because these claims relate to issues that are currently being addressed in the ongoing criminal proceedings, the Court will stay Hook's claims for monetary relief until the termination of those proceedings.[4]

---

[4] Additionally, the United States Supreme Court in *Heck v. Humphrey,* 512 U.S. 477 (1994), ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whole unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. "However, the *Heck* Court did not address the question of whether a § 1983 claim is cognizable if its success would imply the invalidity of a future conviction." *Woodson v. Payton,* 503 F. App'x 110, 111–12 (3d Cir. 2012). Rather, it was in *Wallace v. Kato,* 549 U.S. 384 (2007), that the Supreme Court determined that "[i]f a plaintiff [...] files any [...] claim related to rulings that will likely be made in a pending or anticipated criminal trial[ ], it is within the power of the district court [...] to stay the civil action until the criminal case [...] is ended." *Id.* at 393–94. Here, Plaintiff is attempting to contest issues relating to the alleged seizure of his children as well as whether there was probable cause at the time of the seizure. (*See* Doc. 1.) These issues will likely be, and indeed presently are being, addressed in the ongoing criminal proceedings. *See Commonwealth of Pennsylvania v. Jason A. Hook,* CP-52-CR-0000435-2021. As such, the Court will stay its consideration of Plaintiff's claims for monetary relief that implicate the ongoing criminal proceedings.

## 2. Custody Proceedings

Hook also objects to the R&R on the basis that the *Younger* abstention doctrine does not apply to the Pike County CYS Defendants named in his Complaint. (*See* Doc. 44 at 9-12.) The R&R correctly concluded that the Court should abstain from the ongoing custody proceedings insofar as Hook is requesting injunctive or declaratory relief (Doc. 42 at 14-15). Therefore, for the reasons explained below, the Court will overrule this aspect of Plaintiff's objections and adopt this portion of the R&R as modified.[5]

Here, *Sprint*'s first exceptional circumstance, whether there is an "ongoing state criminal prosecution," *Schall*, 885 F.2d at 106, does not apply to Hook's claims relating to the ongoing *familial* proceedings. The Court therefore must consider whether the ongoing familial proceedings fit within the "certain civil enforcement proceedings" category recognized in *Sprint*, 571 U.S. at 78–79.

The Third Circuit has analyzed the circumstances under which an ongoing state proceeding falls within the "certain civil enforcement proceedings" category established in *Sprint*:

---

[5] The R&R relies on *Lazaridis*, 591 F.3d at 671, to support the finding that "the Third Circuit has expressly applied *Younger* abstention to state court child custody litigation." (Doc. 42 at 14.) Although it is true that *Lazaridis* offers an example of *Younger* abstention being utilized in the familial proceedings context, this decision was made prior to *Sprint*, which narrowed the circumstances under which it is appropriate for a district court to abstain. *Sprint*, 571 U.S. at 78–79. Therefore, the Court must conduct an analysis to determine whether the ongoing child custody proceedings fit within one of the "three exceptional circumstances" identified in *Sprint* to be appropriate grounds for abstention under *Younger*.

> After *Sprint,* the threshold requirement for applying *Younger* abstention is that
> the state civil enforcement proceeding must be "quasi-criminal" in nature.
> *Sprint,* 134 S.Ct. at 593; see also *id.* at 592 (stating that *Younger* generally
> applies only when the state proceeding is " 'akin to a criminal prosecution' in
> 'important respects' "). In evaluating whether a state proceeding is quasi-
> criminal, we consider the factors set out in *Sprint,* including whether (1) the
> action was commenced by the State in its sovereign capacity, (2) the
> proceeding was initiated to sanction the federal plaintiff for some wrongful act,
> and (3) there are other similarities to criminal actions, such as a preliminary
> investigation that culminated with the filing of formal charges. *Id.* at 592. We
> also consider whether the State could have alternatively sought to enforce a
> parallel criminal statute. *See, e.g., Huffman,* 420 U.S. at 604, 95 S.Ct. 1200
> (describing the civil nuisance action as "closely related to criminal statutes
> which prohibit the dissemination of obscene materials"); *Trainor,* 431 U.S. at
> 444, 97 S.Ct. 1911 (pointing out that "[t]he state authorities also had the option
> of vindicating these policies through criminal prosecutions").

*ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).

In this case, the ongoing familial proceedings fit squarely within the type of "civil

enforcement proceeding" that *Sprint* sought to include within the purview of the *Younger*

abstention doctrine. Indeed, post-*Sprint*, the Eighth Circuit and a sister court in this Circuit

have held that familial proceedings initiated by the state that implicate custodial matters are

akin to a "civil enforcement proceeding." *See Oglala Sioux Tribe v. Fleming*, 904 F.3d 603,

610 (8th Cir. 2018) ("South Dakota's temporary custody proceedings are civil enforcement

proceedings to which *Younger* principles apply."); *Shallenberger v. Allegheny Cnty*., No.

2:20-CV-00073-NR, 2020 WL 1465853, at *6 (W.D. Pa. Mar. 26, 2020). Additionally, despite

being decided prior to the *Sprint* decision, in *Moore v. Sims*, 442 U.S. 415 (1979), the

United States Supreme Court held that child custody proceedings initiated by a state are

within the purview of *Younger*:

> The *Younger* doctrine, which counsels federal-court abstention when there is
> a pending state proceeding, reflects a strong policy against federal intervention
> in state judicial processes in the absence of great and immediate irreparable
> injury to the federal plaintiff. *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764,
> 766, 27 L.Ed.2d 688 (1971). That policy was first articulated with reference to
> state criminal proceedings, but as we recognized in *Huffman v. Pursue, Ltd.*,
> 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the basic concern—that
> threat to our federal system posed by displacement of state courts by those of
> the National Government—is also fully applicable to civil proceedings in which
> important state interests are involved. As was the case in *Huffman*, the State
> here was a party to the state proceedings, and the temporary removal of a child
> in a child-abuse context is, like the public nuisance statute involved in *Huffman*,
> "in aid of and *closely related to criminal statutes*." *Id.*, at 604, 95 S.Ct., at 1208.
> The existence of these conditions, or the presence of such other vital concerns
> as enforcement of contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 97
> S.Ct. 1211, 51 L.Ed.2d 376 (1977), or the vindication of "important state policies
> such as safeguarding the fiscal integrity of [public assistance] programs,"
> *Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486
> (1977), determines the applicability of *Younger-Huffman* principles as a bar to
> the institution of a later federal action.

*Moore v. Sims*, 442 U.S. 415, 423 (1979) (emphasis added).

Here, similar to the facts outlined in *Moore*, 442 U.S. 415, *Fleming*, 904 F.3d 603,

and *Shallenberger*, 2020 WL 1465853, the dependency proceedings regarding Plaintiff's

children were initiated by an arm of the state, the Pike County CYS. Additionally, the

dependency proceedings as to the children are related to an investigation into the alleged

criminal activity of Jason and Holly Hook. *See Commonwealth of Pennsylvania v. Holly

Leigh Hook,* CP-52-CR-00000308-2023; *In the Interest of: H.R., a Minor*, CP-52-DP-

0000020-2022; *In the Interest of: H.H., a Minor*, CP-52-0000022-2021. Finally, there are

numerous similarities between the dependency proceedings and criminal proceedings in

that there was an official investigation into the care of the children and a determination that

it would no longer be in the children's best interest to remain in their parents' custody. The

Court is persuaded that *Moore's* pronouncement that "the temporary removal of a child in a

child-abuse context is … in aid of and closely related to criminal statutes" is applicable here.

*Moore,* 442 U.S. at 423 (internal quotations omitted). Based on other court's determinations

and the guidance provided in *Moore*, in this instance, the ongoing state familial case is akin

to a civil enforcement proceeding under *Sprint*.

   Additionally, although the Court need not address the third category discussed in

*Malhan*, 938 F.3d at 462 ("pending civil proceedings involving certain orders uniquely in

furtherance of state courts' ability to perform their judicial functions"), the Court finds that the

ongoing familial proceedings also fit within the third *Sprint* category. Indeed, other courts in

this Circuit have found that child custody proceedings initiated by the state fit squarely within

the third *Sprint* category. *See, e.g., Sinanan v. Child., Youth & Fam. Div., Cnty. of

Northampton, Gov't Agency*, No. 23-CV-2442, 2023 WL 4982252, at *3 (E.D. Pa. Aug. 3,

2023) ("Child custody proceedings are civil proceedings that fall within the third category

and 'are a strong candidate for *Younger* abstention.'"); *see also Nellom v. Ambrose,* No.

2:22-CV-1283-JDW, 2022 WL 4120265, at *1 (E.D. Pa. Sept. 9, 2022); *Smith v. Harrison*,

No. CV 21-5120, 2022 WL 445757, at *4 (E.D. Pa. Feb. 14, 2022). Here, as in the district court cases cited above, the ongoing familial proceedings involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Sprint,* 571 U.S. at 77; *see also Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017) ("the third category of abstention-worthy disputes has been applied only to a few exceptional types of cases ... such as child custody proceedings[.]"). Therefore, the ongoing familial proceedings in this case fit within *Sprint's* second and third category.

Now that the Court has determined that Hook's claims "challenge a civil enforcement proceeding 'akin to a criminal prosecution in important respects.'" *Malhan*, 938 F.3d at 463 (quoting *Sprint*, 571 U.S. at 79), or otherwise fit within the third factor established in *Sprint*, the Court next considers the *Middlesex* factors to determine if abstention under *Younger* would be appropriate. *See Sprint*, 571 U.S. at 81 ("The three *Middlesex* conditions [...] were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*.").

First, examining whether "there are ongoing state proceedings that are judicial in nature," *Schall*, 885 F.2d at 106, the familial proceedings are ongoing in that there continue to be permanency review hearings to determine whether reunification is in the best interest of the children. *See In the Interest of: H.R., a Minor*, CP-52-DP-0000020-2022*; In the Interest of: H.H., a Minor*, CP-52-0000022-2021.

Second, examining whether "the state proceedings implicate important state interests," *Schall*, 885 F.2d at 106, the Third Circuit has consistently held that "the protection of children from abuse and neglect is an important state interest." *Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010). Additionally, in *Lazaridis,* the Third Circuit determined that:

> [t]he second prong of the [*Middlesex*] test asks whether the state proceedings implicate important state interests. We have held that when the other elements of the *Younger* test are met, neither injunctive nor declaratory relief will be available "in cases in which the federal relief would render the state court's orders or judgments nugatory." *Schall,* 885 F.2d at 108; *Juidice,* 430 U.S. at 336 n. 12, 97 S.Ct. 1211. "This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction ... and in which the state courts have a special expertise and experience." *Gordon v. Koppel,* 203 F.3d 610, 613 (9th Cir.2000). Lazaridis requests a declaration that the UCCJEA and the UIFSA are unconstitutional, an injunction preventing Delaware from registering or enforcing current or future custody orders registered pursuant to Delaware law, and an injunction precluding private parties from registering or enforcing the French custody orders. Such relief would nullify the Delaware court's judgments regarding the appropriateness of registering the French custody orders.

591 F.3d at 671 (*abrogated on other grounds in Vuyanich v. Smithton Borough*, 5 F.4th 379, 388-89 (3d Cir. 2021).

Therefore, for the Court to interfere in the ongoing familial proceedings would disturb an important state interest.

Lastly, examining whether "the state proceedings afford an adequate opportunity to raise federal claims," *Schall*, 885 F.2d at 106, the Court notes that, by nature, the ongoing

permanency hearings provide ample opportunity to argue that the custody determinations regarding the children are unconstitutional and to seek relief in the form of reunification. There is no indication that Plaintiff does not have the ability to challenge the decisions of the state court presiding over the permanency review hearings. In fact, Jason Hook has, on multiple occasions, filed appeals to the Pennsylvania Superior Court relating to the ongoing familial proceedings and permanency review hearing orders. *See, e.g., In the Interest of: R.H., a Minor*, 624-eda-2024, *In the Interest of: H.H., a Minor,* 625-eda-2024. The burden rests on Plaintiff to show that state procedural law bars presentation of his claims. *Lazaridis*, 591 F.3d at 670–71 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987)). Hook has failed to meet this burden, and the third element of the *Middlesex* analysis is met.

Therefore, to the extent Jason Hook seeks declaratory or injunctive relief, the Court would effectively be interjecting itself into the ongoing state criminal and familial proceedings by hearing Plaintiff's claims. These are precisely the circumstances under which the Court should abstain. The Court will therefore dismiss these claims without prejudice.[6]

_____

[6] Just as the Court has determined that *Rooker-Feldman* does not apply to Hook's ongoing criminal proceedings, *Rooker-Feldman* also does not apply to Hook's ongoing familial proceedings. The Court's determination that *Rooker-Feldman* is inappropriate with respect to his claims relating to his ongoing familial case is based on *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 621–25 (E.D. Pa.), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). In that case, the United States District Court for the Eastern District of Pennsylvania explained in great detail the nonsensical nature of *Rooker-Feldman's* potential application to claims that are related to ongoing child custody proceedings. *See Mikhail*, 991 F. Supp. 2d at 621–25 ("Of course, it cannot be gainsaid that where custody proceedings are *actually* underway, *Younger* rather than *Rooker* applies (as opposed to when they are conceptually underway, as under the *Anthony* Court's reasoning).") The court

in *Mikhail* concluded that the plaintiff's claims relating to child custody proceedings should be evaluated under *Younger* rather than determining whether *Rooker-Feldman* applies. *Id.* at 625–26. On appeal, the Third Circuit affirmed the district court's decision, and noted that:

> "[i]n addition, to the extent that the divorce and custody proceedings are ongoing and Mikhail sought relief relating to specific visitation or support determinations, including the orders prohibiting him from taking his daughter to visit her grandmother in Canada and requiring supervised visitation, the District Court properly abstained from interfering in the ongoing state proceedings. *See Anthony v. Council,* 316 F.3d 412, 420–21 (3d Cir.2003) (*Younger* abstention appropriate where important state interests concerning child support are implicated)."

*Mikhail*, 572 F. App'x at 71 n.2.

Other sister courts in the Third Circuit have similarly declined to use *Rooker-Feldman* as the basis for dismissal in the context of ongoing state familial proceedings. *See, e.g., Gok v. United States,* No. CV 22-4838, 2023 WL 4140827, at *2–3 (E.D. Pa. June 22, 2023), *aff'd,* No. 23-2150, 2024 WL 1597690 (3d Cir. Apr. 12, 2024) ("[W]e agree with Gok to the extent she contends that *Rooker-Feldman* did not deprive the District Court of jurisdiction."); *Dormevil v. Domestic Rels. Off. Delaware Cnty. Pennsylvania Child Support Agency,* No. CV 23-3025, 2023 WL 6144845, at *5 n.41 (E.D. Pa. Sept. 20, 2023) ("Analogizing child custody cases to child support cases, we apply *Younger* abstention rather than abstention under the *Rooker-Feldman* doctrine.") (internal citation omitted); *McCall v. Montgomery Cnty. Off. of Child & Youth,* No. CV 23-933, 2023 WL 4440274, at *3 n.3 (E.D. Pa. July 10, 2023) (recognizing that "it is unclear that the order awarding temporary custody of McCall's minor child to MCOCY is a final order requiring dismissal under *Rooker-Feldman*," and instead dismissing the case via *Younger.*)

Here, through his Complaint, Hook is attacking the state court's custody determination that removed his children from Holly Hook's custody. *See In the Interest of: H.R., a Minor,* CP-52-DP-0000020-2022; *In the Interest of: H.H., a Minor,* CP-52-0000022-2021. Hook's Complaint focuses on what he purports to be the unlawful seizure of his children by Defendants. (*See* Doc. 1 ¶¶ 40, 42, 49, 56, 57, 62, 63, 69, 70, 72, 78, 79, 83, 92, 138, 143.) The familial proceedings related to Hook's children are ongoing in nature, with permanency review hearings continuing to regularly take place to determine whether reunification is possible and in the best interest of the children. *See In the Interest of: H.R., a Minor,* CP-52-DP-0000020-2022; *In the Interest of: H.H., a Minor,* CP-52-0000022-2021. Hook also has appeals pending as to the ongoing familial proceedings. *See In the Interest of: R.H., a Minor,* 624-eda-2024; *In the Interest of: H.H., a Minor,* 625-eda-2024. These are precisely the circumstances under which sister courts in this circuit have determined that *Younger,* rather than *Rooker-Feldman,* is the appropriate basis upon which the Court should dismiss the Complaint. *See Mikhail,* 991 F. Supp. 2d at 621–26; *Gok,* 2023 WL 4140827 at *2–3. Like in *Mikhail* and *Gok,* it is most proper to consider dismissal of Hook's claims under *Younger* due to the ongoing nature of the proceedings at issue. Therefore, for the reasons explained above, the Court declines to adopt the R&R's determination that *Rooker-Feldman* should serve as a jurisdictional bar.

To the extent that Hook seeks monetary relief stemming from alleged constitutional violations, the Court willl stay the proceedings with respect to Plaintiff's claims for monetary relief stemming from actions related to the ongoing familial proceedings for the same reasons discussed *supra* with respect to Plaintiff's criminal proceedings. *See Wallace*, 549 U.S. at 393-394. The Court overrules Plaintiff's objections in this regard and adopts this portion of the R&R as modified.

Because the Court will dismiss and stay Plaintiff's claims under the *Younger* abstention doctrine, the Court need not address whether immunity is applicable at this stage. This is because the application of sovereign immunity in this instance would result in nothing more than a dismissal without prejudice. *See, e.g., Jones v. Sussex Corr. Inst.,* 725 F. App'x 157, 159 (3d Cir. 2017). As to the potential application of qualified immunity, although the Court acknowledges its duty to "resolv[e] immunity questions at the earliest possible stage in litigation," *Pearson v. Callahan,* 555 U.S. 223, 232 (2009), "[t]he concerns that support determining qualified immunity at the earliest stage of litigation are not present here." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 372 (6th Cir. 2017). Namely, because the Court is abstaining or otherwise staying consideration of Plaintiff's claims, "there will be no discovery or ongoing litigation costs in the federal court […] [n]or will Defendant[s] […] be forced to undergo a trial or waste extensive time and resources when []he ultimately may be

entitled to qualified immunity." *Id.* Therefore, the Court will decline to consider whether immunity is applicable and respectfully declines to adopt this portion of the R&R.

## V. CONCLUSION

For the reasons set forth above, the R&R (Doc. 42) will be adopted as modified. Plaintiff's Motion to Appoint Guardian Ad Litem (Doc. 41) will be denied. Defendants' Motion to Dismiss the Complaint (Doc. 31) will be granted in part as it relates to Plaintiff's claims for declaratory or injunctive relief, which will be dismissed without prejudice. Plaintiff's claims for monetary relief will be stayed pending the termination of the ongoing state court proceedings. The case will be closed for statistical purposes only. A separate Order will follow.

Robert D. Mariani
United States District Judge